# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| DISTRICT HOSPITAL PARTNERS, L.P., d/b/a The George Washington University Hospital, *et al.*, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | Civil Action No. 16-cv-528 (ESH) |
| ALEX M. AZAR II, Secretary, Department of Health and Human Services, | ) ) ) ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM OPINION

### I. BACKGROUND

Plaintiffs, owners and operators of hospitals that participate in the federal Medicare program, first brought suit to challenge the Medicare Inpatient Prospective Payment System (IPPS) outlier thresholds for the federal fiscal years (FFY) 2004, 2005, and 2006 in the prior case of *District Hospital Partners, L.P. v. Sebelius*, No. 11-cv-116 (D.D.C.). In that proceeding, the Court granted defendant Secretary of Health and Human Services ("HHS")'s motion for summary judgment. *See Dist. Hosp. Partners, L.P. v. Sebelius*, 973 F. Supp. 2d 1, 23 (D.D.C. 2014). On appeal, the Court of Appeals affirmed in part and reversed in part. *Dist. Hosp. Partners, L.P. v. Burwell*, 786 F.3d 46, 63 (D.C. Cir. 2015) ("*District Hospital I*"). The Court of Appeals affirmed this Court in rejecting plaintiffs' challenges to the 2005 and 2006 outlier thresholds. *Id.* at 60–63. However, the Court of Appeals reversed with respect to the FFY 2004

rule, remanding to HHS for additional explanation regarding its rulemaking for that year.  *Id.* at 60.  In particular, the Court of Appeals instructed:

> On remand, the Secretary [of HHS] should explain why she corrected for only 50 turbo-charging hospitals in the 2004 rulemaking rather than for the 123 she had identified in the NPRM.  She should also explain what additional measures (if any) were taken to account for the distorting effect that turbo-charging hospitals had on the dataset for the 2004 rulemaking.  And if she decides that it is appropriate to recalculate the 2004 outlier threshold, she should also decide what effect (if any) the recalculation has on the 2005 and 2006 outlier and fixed loss thresholds.

*Id*.

On January 22, 2016, HHS issued further explanation regarding its 2004 rulemaking in accordance with this directive.  *See* Explanation of FY 2004 Outlier Fixed-Loss Threshold as Required by Court Rulings, 81 Fed. Reg. 3,727 (Jan. 22, 2016) ("Remand Explanation").  Because the prior action had been terminated upon remand to HHS, plaintiffs filed the above-captioned case.  In this second suit, plaintiffs again alleged that HHS's outlier threshold determinations for FFY 2004, 2005, and 2006 were arbitrary and capricious in violation of the Administrative Procedure Act ("APA").  (Compl. ¶ 39.)

On May 27, 2016, defendant filed a motion to dismiss in part under Federal Rule of Civil Procedure Rule 12(b)(6), "seek[ing] dismissal of all the claims in the complaint except the claims that contest the Secretary's fiscal year 2004 fixed loss threshold determination based on the issues identified for remand in *District Hospital Partners, L.P. v. Burwell*, 786 F.3d 46 (D.C. Cir. 2015)." (Def.'s Mot. to Dismiss in Part, ECF No. 8.)  The Court granted this motion on November 18, 2016, concluding that plaintiffs' challenge to the FFY 2005 and 2006 outlier determinations—as well as any new arguments regarding the FFY 2004 determination—were

barred by the doctrines of claim and issue preclusion. (Memorandum Opinion at 6–7, ECF No. 21 ("Mem. Op."); Order, ECF No. 20 (collectively "2016 Partial Dismissal Order").)

On November 29, 2016, plaintiffs filed an unopposed motion to stay given the pendency of *Banner Health v. Price*, No. 16-5129, in the Court of Appeals. *Banner Health* involved challenges brought by different plaintiff hospitals to the same FFY 2004 outlier threshold being challenged in the case at hand, as well as challenges to the calculations in years 1997-2003 and 2005-2007. *Banner Health v. Price,* 867 F.3d 1323, 1328 (D.C. Cir. 2017).

The Court of Appeals considered three principal challenges to the 2004 rulemaking in *Banner Health*, which were addressed in Part VI of its opinion. *See id.* at 1342–49. In Part VI.B, the Court considered the adequacy of HHS's explanation regarding its assumption "that the rate at which charges had inflated between FYs 2000 and 2002 would accurately approximate charge growth" and its failure to "exclude charge data for the 123 historical turbo-chargers from its FY 2004 charge-inflation calculation." *Id.* at 1345–46. The Court held that HHS had acted arbitrarily and capriciously, finding the agency's explanation on this point to be insufficient. *Id.*

In Part VI.C, the Court of Appeals addressed the plaintiffs' challenge to HHS's "explanation for adjusting the projection cost-to-charge ratios of only 50 turbo-chargers in order to account for the possibility of reconciliation." *Id.* at 1346. The Court determined that HHS's explanation was adequate on this point and rejected the plaintiffs' challenge. *Id.* at 1348.

Part VI.D examined the plaintiffs' third challenge to the 2004 rule, which "contend[ed] that it was irrational for HHS to appl[y] a charge[-]inflation factor when predicting hospital charges for the 2004 fiscal year without adjusting [hospitals' cost-to-charge ratios][.]" *Id.* at 1348 (internal quotation marks omitted). The Court of Appeals found the plaintiffs' challenge on this point to be meritorious, holding that "HHS acted arbitrarily and capriciously in failing to

3

adequately explain why it did not adjust its projection cost-to-charge ratios downward." *Id.* at 1349. The Court of Appeals also determined that the 2005 and 2006 rulemaking suffered from this same flaw. *Id* at 1352–53.

In light of the Court of Appeals' decision in *Banner Health*, defendant proposed that the Court lift the stay in this matter and enter a final order remanding to HHS. (Apr. 9, 2018 Joint Status Report at 2, ECF No. 29.) Plaintiffs did not oppose this proposal. (*Id.*). On April 23, 2018, the Court directed the parties to submit proposed final orders with supporting briefs. (Order at 4, ECF No. 31.)

In response, the parties filed competing submissions that request several alternate forms of relief. (Pls.' Submission, ECF No. 35; Def.'s Submission, ECF No. 36.) Plaintiffs ask the Court to reconsider the 2016 Partial Dismissal Order in light of the Court of Appeals' decision in *Banner Health*. (Pls.' Submission at 2, 5–6.) In the alternative, plaintiffs seek clarification of that ruling. (*Id.* at 6–7.) Meanwhile, defendant requests partial summary judgment based on Part VI.C of *Banner Health*, where the Court of Appeals rejected the hospitals' arbitrary-and-capricious challenge to HHS's selection of only 50 hospitals as likely to be subject to reconciliation. (Def.'s Submission at 6 (citing *Banner Health*, 867 F.3d 1346–48).)

Lastly, the parties dispute the scope of the remand to HHS. Plaintiffs argue that the remand should encompass the full scope of the issues identified for remand by the Court of Appeals in *Banner Health*. (Pls.' Submission at 2–3 (requesting remand "consistent with *Banner* Part VI in its entirety for the Hospitals with claims for 2004, and *Banner* Parts VI, VII, and VIII in their entirety for the Hospitals with claims for 2005 and 2006").) By contrast, defendant argues that only the issue discussed in Part VI.B of *Banner Health* remains in this case after the

4

Court's November 2016 ruling, and thus only this issue should be remanded to HHS. (Def.'s Submission at 5–6.)

II.     ANALYSIS

   A. **Plaintiffs' Motion for Reconsideration of the 2016 Partial Dismissal Order**

Plaintiffs ask the Court to reconsider its 2016 Partial Dismissal Order, arguing that reconsideration is warranted because the ruling conflicts with the subsequent Circuit decision in *Banner Health v. Price*, 867 F.3d 1323 (D.C. Cir. 2017). (*See* Pls.' Submission at 2, 5–6.) Plaintiffs' argument appears to be that a conflict exists because *Banner Health* recognized that certain arbitrary-and-capricious challenges to the FFY 2005 and 2006 thresholds were meritorious, while the 2016 Partial Dismissal Order dismissed those challenges in this case. (*Id.* at 5–6.)

Plaintiffs are mistaken in their assertion that there is a conflict. The Court's Memorandum Opinion did not analyze the merits of arbitrary-and-capricious challenges to the FFY 2005 and 2006 rulemaking. (*See* Mem. Op. at 6–7.) Instead, it dismissed those challenges on the basis of claim and issue preclusion. (*Id.*) The Court of Appeals' decision in *Banner Health* does not alter the analysis described by the Court regarding the effects of claim and issue preclusion on plaintiffs' claims. *See Hardison v. Alexander*, 655 F.2d 1281, 1288–89 (D.C. Cir. 1981) (explaining that subsequent judicial decisions are not a basis to override the doctrine of res judicata in civil cases, absent extraordinary circumstances such as "paramount questions of constitutional law or exclusive jurisdiction"). The Court thus denies plaintiffs' request to reconsider its 2016 Partial Dismissal Order.

### B. Plaintiffs' Request for Clarification of the 2016 Partial Dismissal Order

Plaintiffs alternatively request that this Court clarify the preclusionary effects of its November 18, 2016 ruling in regards to the claims of some plaintiffs, HCA Hospitals, who have claims currently pending before another district court judge in *Galen Hospital Alaska, Inc. v. Azar*, No. 18-cv-728-RBW (D.D.C.). (*See* Pls.' Submission at 6–7.) Plaintiffs explain that in *Galen* a subset of the plaintiffs here, HCA Hospitals, have brought a challenge to the 2005 and 2006 outlier threshold rulemaking. (*Id.*) They seek for this Court to clarify that HCA Hospitals' 2005 and 2006 claims in *Galen* are not precluded by the 2016 Partial Dismissal Order. (*Id.*)

The preclusive effect of this Court's ruling is a determination to be made by the judge before whom the *Galen* case is pending. *See, e.g.*, *Smith v. Bayer Corp.*, 564 U.S. 299, 307 (2011) ("[A] court does not usually 'get to dictate to other courts the preclusion consequences of its own judgment.' Deciding whether and how prior litigation has preclusive effect is usually the bailiwick of the *second* court[.]") (quoting 18 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 4405, p. 82 (2d ed. 2002)). Therefore, the issue of whether the HCA Hospitals are barred from bringing their 2005 and 2006 outlier threshold claims in *Galen* is not properly before this Court. Accordingly, the Court denies plaintiffs' request.

### C. Defendants' Request for Partial Summary Judgment

Given the Court of Appeals' decision in Part VI.C of *Banner Health*, which concluded that HHS provided an adequate explanation in its Remand Explanation "for adjusting the projection cost-to-charge ratios of only 50 turbo-chargers in order to account for the possibility of reconciliation," 867 F.3d at 1346, defendant has requested partial summary judgment with respect to plaintiffs' challenge on this basis. (*See* Def.'s Submission at 6.) The *Banner Health* decision forecloses plaintiffs' challenge to the FFY 2004 determination that is based on the

argument described in Part VI.C of *Banner Health*, and thus the Court grants defendant partial summary judgment only with respect to the challenges articulated in Part VI.C of *Banner*.[1]

### D. Scope of Remand to HHS

The parties' submissions also disagree as to the scope of this Court's remand to HHS. The parties agree that the topic discussed in Part VI.B of *Banner Health* remains at issue in this matter and should be remanded to HHS for additional explanation. (*See* Pls.' Submission at 3; Def.'s Submission at 5–6.) However, the parties dispute whether the issue discussed in Part VI.D of *Banner Health* is an appropriate subject for remand from this Court: the application of a "charge[-]inflation factor when predicting hospital charges for the 2004 fiscal year without adjusting [hospitals' cost-to-charge ratios]." 867 F.3d at 1348 (internal quotation marks omitted). Plaintiffs argue that the Court should remand to HHS for explanation on this issue, while the defendants argue that it should not. (*See* Pls.' Submission at 3–5; Def.'s Submission at 6–7.)[2]

The FFY 2004 cost-to-charge ratios calculations discussed in *Banner Health* Part VI.D would only be appropriate for remand from this Court if this claim remained in this case after the Court's grant of defendant's partial motion to dismiss, which had sought "dismissal of all the claims in the complaint except the claims that contest HHS's fiscal year 2004 fixed threshold determination based on the issues identified for remand in *District Hospital Partners, L.P. v.*

---

[1] To the extent defendant's submission may be construed as a request for summary judgment with respect to the challenges discussed in Part VI.D of *Banner Health*, the Court denies that request without prejudice. As explained *supra*, the FFY 2004 calculation of cost-to-charge ratios discussed in Part VI.D of *Banner Health* is within the scope of the Court's remand to HHS.

[2] Plaintiffs also request that the Court's remand include the FFY 2005 and 2006 determinations. (Pls.' Submission at 5–6.) Given that the Court denies plaintiffs' request for reconsideration of the 2016 Partial Dismissal Order, the Court denies plaintiffs' request to remand to HHS for further explanation regarding its determinations from those years. Plaintiffs' 2005 and 2006 challenges are no longer part of this case.

*Burwell*, 786 F.3d 46 (D.C. Cir. 2015)." (Def.'s Mot. to Dismiss in Part.) Thus, the parties' dispute lies at whether the argument discussed in Part VI.D of *Banner Health* is within the issues identified for remand in *District Hospital I*.

Defendant argues that the issues encompassed by the *District Hospital I* remand are "exclusively . . . whether and how [HHS] adjusted [its] methods for calculating projected Medicare payments to account for past improper charging practices known as 'turbocharging.'" (Def. Submission at 6.) Defendant asserts that the adjustment of cost-to-charge ratios discussed in Part VI.D is a separate issue from turbocharging. (*Id.*) By contrast, plaintiffs argue that HHS's discussion of cost-to-charge ratios in its Remand Explanation—which in turn was the subject of discussion in Part VI.D of *Banner Health*—was a direct response to the remand instruction in *District Hospital I* that HHS explain, *inter alia*, the "measure[s] . . . taken to account for the distorting effect that turbo-charging hospitals had on the dataset for the 2004 rulemaking." (Pls.' Submission at 3 (quoting *District Hospital I*, 786 F.3d at 60).)

The Court concludes that the issue discussed in Part VI.D of *Banner Health* is properly within the scope of the matters that remain in this case, as that portion of *Banner Health* relates to the FFY 2004 determination and focused on a section of HHS's Remand Explanation, 81 Fed. Reg. at 3,729, that is a response to the remand instruction from *District Hospital I*. *See Banner Health*, 867 F.3d at 1349. *Banner Health* Part VI.D discussed a paragraph of the Remand Explanation that begins with "[t]he court rulings also called for an explanation of other steps taken to account for any 'distorting effect' associated with the 123 [turbocharging] hospitals" and proceeds to explain HHS's calculation of cost-to-charge ratios. *See id.* (citing 81 Fed. Reg. at 3,729). It is perplexing why HHS would discuss its calculation of cost-to-charge ratios in its

8

Remand Explanation only to now argue here that this issue was never within the scope of the remand from *District Hospital I.*

The Court thus remands to HHS for further explanation of the FFY 2004 determination consistent with Parts VI.B and VI.D of *Banner Health,* 867 F.3d at 1345–46, 1348–49.

### III. CONCLUSION

For the reasons stated herein, this Court denies plaintiffs' motion for reconsideration, denies plaintiffs' request for clarification, grants partial summary judgment to defendant with respect to the challenge to the FFY 2004 rule that was rejected by the Court of Appeals in Part VI.C of *Banner Health*, 867 F.3d at 1346–48, and remands to HHS for further proceedings consistent with Parts VI.B and VI.D of *Banner Health*, *id.* at 1345–46, 1348–49. A separate Order accompanies this Memorandum Opinion.

/s/ Ellen S. Huvelle
ELLEN S. HUVELLE
United States District Judge

Date: August 2, 2018